HARRY J. STOECKLE and JOSEPH STOECKLE BREWING COMPANY,

*vs.*

CAESAR H. ROSENHEIM, DAVID G. ROSENHEIM and ALBERT ROSENHEIM, trading under the firm name of H. Rosenheim & Son, MAX CHILINSKY and MARIA F. CHILINSKY, his wife, and WALTER S. BURRIS, Sheriff.

*Injunction Bill.*

CAESAR H. ROSENHEIM, DAVID G. ROSENHEIM and ALBERT ROSENHEIM, trading under the firm name of H. ROSENHEIM AND SON,

*vs.*

HARRY J. STOECKLE and JOSEPH STOECKLE BREWING COMPANY.

*Cross-Bill.*

*New Castle, July* 24, 1915.

Where a second mortgagee, who had acquired legal title to the premises, paid the first mortgage and secured a satisfaction of record thereof

under a mistaken belief that a third mortgage had been satisfied by execution against the personal property of the mortgagor, the first mortgage will be revived, and the second mortgagee subrogated to the rights of that lien-holder, notwithstanding there was a subsequent suit to foreclose the second mortgage; it not appearing that it was intended by the second mortgagee to waive his priority.

Where second and third mortgagees united in obtaining a conveyance from the mortgagor, and the tenant of the second mortgagee, to whom conveyance was made, entered into possession, an agreement between the mortgagees that the rent should be applied to the satisfaction of the amounts they advanced to the mortgagor will be given effect.

Where a second mortgagee obtained a conveyance of the equity of redemption from the owner and entered into possession, he was not a mortgagee in possession and bound to account to the other lienholders for rents received.

Where defendants, who cross-complained, obtained part of the relief asked, and complainant was successful only in part, all costs of both suits will be charged against complainant; the whole controversy having been caused by a mistake of the officers of complainant.

The facts alleged in the original bill are set forth in the report of the opinion rendered on the rule requiring the defendants to show cause why a preliminary injunction should not be issued, 10 *Del. Ch.* 195, 87 *Atl.* 1006, and the additional facts alleged by amendments and the answer of Rosenheim and Son, (the other defendants being formal parties,) as well as the allegations of the cross-bill, amendments and answer thereto, are sufficiently stated in the opinion. By agreement of counsel both causes were heard together by the Chancellor on oral testimony of witnesses and exhibits.

*Harry Emmons,* for the complainants in the original bill and the defendants in the cross-bill.

*David J. Reinhardt,* for the defendants Rosenheim and Son in the original bill, and for the complainants in the cross-bill.

THE CHANCELLOR. In this case the original bill was filed June 24, 1913, and a rule for a preliminary injunction having

been heard, it was granted by an order made August 7, 1913, pursuant to an opinion of the Chancellor filed August 5, 1913, 10 *Del. Ch.* 195, 87 *Atl.* 1006. The facts upon which that opinion was based appear therein, and in the statement accompanying it, to which reference is made. At this preliminary hearing the decision was based on the mistake of officers of the Stoeckle Brewing Company in believing that the debt of Rosenheim and Son had been paid, and this was considered a mistake of fact against the consequences of which relief should be granted.

By an amendment filed May 11, 1914, the complainants alleged that the mortgage debt due Rosenheim and Son had been paid in full. The defendants Rosenheim and Son, by answer filed July 2, 1914, to the bill as amended, denied specifically that the mortgage debt had been paid, and alleged that there was still due on the mortgage held by them $1,051.03 and interest from July 2, 1907; and while admitting almost all the allegations of the bill, did not admit or deny the allegations of the complainant as to the circumstances under which the first mortgage was paid and satisfied of record, or the legal consequences thereof.

On July 7, 1914, the defendants Rosenheim and Son filed a cross-bill against the complainants in the original bill, alleging that the gross annual rental value of the hotel was about $1,500, and that Stoeckle should account for the rents received, or which he should have received, and that these rents should be applicable to the several mortgages; and asked that an accounting thereof be ordered so that Rosenheim and Son could bid intelligently at the sale to be made for the payment of the liens. To this cross-bill the complainants in the original bill answered that the consideration for the deed from Chilinsky was not a nominal one, but $250, which was full consideration for the equity in the property over the mortgage liens, and denied the duty of Stoeckle to account for the rents; and also alleged payment of the Rosenheim mortgage.

On April 19, 1915, the cross-bill was amended by adding allegations, in substance, that about July 11, 1907, the Stoeckle Company paid $250 and Rosenheim and Son $275 as a consideration for the deed from Chilinsky to Stoeckle; and that an

agreement was made between them that these sums would be repaid from the rents to be received by Stoeckle, and that Rosenheim and Son had not received the sum of $275 so paid by them. A prayer was added that the rents be applied first to repay Rosenheim and Son $275, and afterwards to pay the existing liens.

The defendants named in the cross-bill, on April 20, 1915, answered the cross-bill, as amended, saying that the real consideration for the deed from Chilinsky to Stoeckle was $250 in money paid and the waiving of a book account for $250.25 due the Stoeckle Company from Chilinsky. They denied the agreement as to the rents and any right of Rosenheim and Son to an accounting therefor. The complainants in the original bill also amended their bill by adding to it the matters referred to above as contained in the answer to the cross-bill.

The pleadings have been referred to in order that the contentions of the parties may be clear, and to show that on both sides there was uncertainty as to the exact facts, for there were shifts of position on both sides. Much testimony was heard, and some of it was confusing. But in substance the facts and admissions of the parties and the evidence of their witnesses are substantially these:

About July 1, 1907, Chilinsky owning the hotel subject to the three mortgages, abandoned the property, which was licensed as a hotel with the right to sell liquor there. Rosenheim and Son having entered judgment on the bond accompanying their mortgage, issued a *fi. fa.* execution, obtained a levy on personal property, which was the furniture of the hotel, had it sold and bought it at the sheriff's sale for $600, they considering it worth about $2,800. After the sale Cornelius Mundy offered to buy from Rosenheim and Son for $2,200 the personal property, and the transaction was concluded by the giving by Mundy of a check for $500 and a note of one Godwin for $1,700 indorsed by Mundy. Rosenheim and Son at the time calculated with Mundy the amount due from Chilinsky to Rosenheim and Son on the judgment, and all costs and expenses. Afterward it was found that the ownership of the furniture of the hotel did not give the rights arising

under the license, and that it was necessary to obtain a transfer of it from Chilinsky, which would cost money. Rosenheim and Son on July 3, 1907, gave Mundy a written agreement to refund the money and note received for the transfer of the property if the license was not transferred. It cost $525 to obtain from Chilinsky the deed and the assignment of the license, and of this Rosenheim and Son paid $275 and the Stoeckle Brewing Company $250, and the deed was made to Mr. Stoeckle, the president of the Stoeckle Brewing Company. On July 11, 1907, Cornelius Mundy gave to Rosenheim and Son an agreement in writing that Rosenheim and Son would be repaid from the rents of the hotel the sum of $275 paid by them as part of the $525 paid to Chilinsky for the deed and license. Mr. Mundy testified that he considered the debt of Rosenheim and Son from Chilinsky was paid. Charles B. Evans, Esq., who had acted as attorney for Rosenheim and Son, testified that the deed to Stoeckle was made to protect the interests of both the Stoeckle Brewing Company and Rosenheim and Son. Rosenheim and Son have not been paid the $275.

It is not clear as to the interest of Mundy in these transactions, or for whom he was acting; but it does appear that the Stoeckle Brewing Company was at least aware of what he did, and that Rosenheim and Son and the Stoeckle Brewing Company adopted what he arranged. It may be concluded that Mundy thought that the claim of Rosenheim and Son against Chilinsky had been satisfied by the payment of the sum of $2,200 by Mundy, and that the Stoeckle Brewing Company, or its counsel, also so understood the transaction. Whether this was justified or not is immaterial; and it is equally immaterial that Rosenheim and Son in selling the furniture were in fact making a profit therefrom, and that their debt still remained unpaid as far as Chilinsky and the mortgage lien was concerned, for the thing to be ascertained is the mental attitude of the Stoeckle Brewing Company when it paid off the first mortgage and had the record of it satisfied.

From the testimony it is reasonably clear that it acted under a mistake of fact as to the matter, and the testimony taken in the cause sustains that taken at the preliminary hear-

ing.    Much stress was laid by counsel for Rosenheim and Son upon the fact that the Stoeckle Brewing Company in June, 1908, brought suit on the mortgage held by it, being the second lien, and obtained judgment therein for the amount due them; and this, it is urged, shows knowledge on the part of the company that the mortgage debt of Rosenheim was not then paid, because the only reason for bringing the suit was to make a sale which would vest a title clear of the mortgage of Rosenheim and Son.    But this may, or may not, have been the reason for instituting the suit, and there is no evidence of that intention.    Nor is it necessary to supply another reason than that claimed.    The Stoeckle Brewing Company did not by their conduct forfeit the assistance of this court, and were not guilty of inexcusable negligence.    After a full consideration of this branch of the case and the law applicable thereto, the conclusion is the same as that reached at the preliminary hearing, and it is not deemed necessary to here restate the principles of law applicable.    The Stoeckle Brewing Company is entitled to be relieved from the consequences of its mistake in directing a satisfaction of the first mortgage, and that mortgage will be reinstated as a valid and subsisting lien with the priority it had before it was satisfied.

By the cross-bill the claim is made that Rosenheim and Son and the Stoeckle Brewing Company acted for their joint benefit in paying money to Chilinsky for the deed and license; and that it was agreed between them that the money paid by Rosenheim and Son, $275, should be repaid by the Stoeckle Brewing Company from the rents of the hotel.    This is not admitted by the Stoeckle Brewing Company, but it was established by the testimony.    Mr. Evans so testified.    Rosenheim and Son's interest in making the payment was to make good his engagement with Mundy, for the payment was for the license as well as for the deed and Rosenheim and Son had undertaken with Mundy to obtain the license from Chilinsky.    Mundy's undertaking for the repayment from the rents of the hotel of the moneys so paid by Rosenheim and Son, and the testimony of Mr. Evans, establish the duty of the Stoeckle Brewing Company to repay to Rosenheim and Son the money

so advanced by Rosenheim and Son, viz., $275. This is distinctly claimed by the cross-bill, and for this purpose the accounting of rents is asked. From the testimony it appears that the annual rent charged by the Stoeckle Brewing Company in the leases made by it of the hotel was for part of the time $1,000 yearly, and also that for at least two years it received rent at that rate; and no showing was made respecting the deductions to be made from the rent for taxes, insurance, repairs and other such charges. Therefore, it may be safely concluded that the Stoeckle Brewing Company received since 1907, as net rents, more than enough money to repay to Rosenheim and Son the sum of $275. They are entitled to this, unless upon an accounting to be made by the Stoeckle Brewing Company it should show that the net rents were not so sufficient.

It is also claimed that the net rents should be applied to the liquidation of the mortgages, which were liens on the property. This claim is not based on the agreement of the parties, but upon the duty of a mortgagee in possession of the mortgaged premises to so account to the mortgagor and his assigns. By their amendment filed April 19, 1915, to the cross-bill the complainants therein, Rosenheim and Son, stated that the agreement between them and the Stoeckle Brewing Company respecting the payment to Chilinsky of $250 by the Stoeckle Brewing Company and $275 by Rosenheim and Son was that these sums were to be repaid out of the rents, and it was not there claimed that there was any agreement for the application of the rents to the liquidation of the mortgage debts. The complainants are bound by this allegation, and their only right to the rents as against either Stoeckle, or the Stoeckle Brewing Company, arises from the principles of law, if there be any, and not from an agreement, for no such agreement was alleged, or claimed.

It is clear that neither Stoeckle nor the Stoeckle Brewing Company is bound to account to Rosenheim and Son for the rents received from the hotel, based on the assumption that he or it was the tenant in possession thereof. One who is not in possession as mortgagee is not accountable for rents. The

term "mortgagee in possession" is applied to one who is in possession standing on his rights as mortgagee and not as grantee from the mortgagor.    27 *Cyc.* 1237.

In the case of *Anglo-California Bank v. Field*, 154 *Cal.* 513, 98 *Pac.* 267, it was said, citing authorities:

"It is well settled that a mortgagee in possession under a deed of the equity of redemption from the mortgagor is not liable as mortgagee in possession to account to junior lien holders for rents and profits received after the time he took possession under the deed."

The conclusions, then, are that the Stoeckle Brewing Company is entitled to have reinstated the lien of the first mortgage on the premises for the full amount of the debt and interest thereon, and to recover payment thereof from the mortgaged premises; that Rosenheim and Son are entitled to be repaid from the rents received by the Stoeckle Brewing Company the sum of $275 paid by them to Chilinsky, and are entitled to an accounting of the rents, unless the Stoeckle Brewing Company make payment of said sum; and that Rosenheim and Son are not entitled to an application of the rents to the liquidation or reduction of the mortgage debts.

At this time the form of the decree to be made to carry into practical effect the principles here stated is not suggested and counsel will be heard as to the matter if they desire.

All the costs will be charged against the complainant, the Stoeckle Brewing Company, both of the original and cross-bill, because the mistake of its officers caused the litigation started by the original bill, and the complainants in the cross-bill were successful in part, at least, of the claims there made.