New Jersey Department of Labor,
Workmen's Compensation Bureau.

EDWARD JOHNSON, PETITIONER, v. H. GASNER, INC.,
GLENS FALLS INDEMNITY CO., RESPONDENT.

Decided December 16, 1940.

For the petitioner, David Roskein.

For the respondent, Cox & Walburg (by Arthur Mead).

\*    \*    \*    \*    \*    \*    \*

It was stipulated and agreed between the parties that the testimony· adduced under the petition filed herein should be considered as the testimony adduced under a certain other claim petition filed by Margaret Johnson, widow of the petitioner, on June 11th, 1940. The claim petition for the within petition is number 46349. The claim petition filed by Margaret Johnson is number 49728. It was alleged that Edward Johnson on October 7th, 1937, in the course of his regular employment with the respondent, had occasion to repair an icebox and that while doing so he inhaled sulphur dioxide.

A William Sullivan testified on behalf of the petitioner as to the occurrence of this event although he did not know of his own knowledge that this had actually occurred to Edward but that he had spoken to Edward as Edward came back to work and the event was recited to him. The petitioner remained out of work for a period of approximately two weeks following the episode and then returned to his regular work as a service man doing his regular work. After working approximately two or three weeks upon his return his employment was discontinued because of lack of business and

he obtained employment at a place known as the Hill Top Tavern where he worked steadily thereafter until the latter part of January, 1939.

Mrs. Johnson testified to this continuation of employment and stated that her husband did not complain or say very much. The first night after the accident he coughed a little but thereafter he stated he was feeling all right and after a few weeks he appeared to be in good health. All during the time he was working at the tavern he appeared to be well and made no complaints until the early part of 1939 when he began looking white and seemed to be a little weak. He then went to a doctor. Later he was referred to a sanatorium and subsequently died.

A Mrs. Theiss, a sister-in-law of Edward, stated that she was present in her mother's home the day following the accident and that Edward seemed to be sick for that day. He stayed home for two weeks and then returned to work. She stated that he complained of irritation in his throat and he appeared to have a cough which was more in his throat than anywhere else.

On behalf of the petitioner, Dr. Champlin stated that he had occasion to examine the petitioner as a food handler in Bloomfield and on his examination found no pulmonary condition, no signs of tuberculosis and had a negative sputum test. Also on December 28th, 1938, he found no pulmonary condition and so reported. His reports and the health cards were placed in evidence. He also had occasion to refer the petitioner to the Orange Memorial Hospital in December, 1937, when the petitioner offered himself as a blood donor for a member of the family. The petitioner was accepted as a blood donor after a thorough physical examination. Dr. Champlin then saw the petitioner in the early part of 1939 at which time he referred the petitioner to Dr. Repas and subsequently the petitioner was entered in Verona Sanatorium January of 1939 and discharged July, 1939. The petitioner was not under treatment then until April, 1940, when he was again sent to the Verona Sanatorium and where he died April 26th, 1940, of tubercular meningitis.

The doctor when presented with all of the facts as a hypo-

thetical composition, stated by reason of the facts themselves there should be some connection between the exposure to sulphur dioxide and the illness which the petitioner had and his subsequent death. The death certificate was placed in evidence. The petitioner produced other documentary and oral testimony.

On behalf of the respondent, Dr. Koppel testified from numerous examinations made by him. These examinations were made during the lifetime of the petitioner. He stated that in his opinion the petitioner did not suffer any pulmonary condition as a result of the episode of October 7th, 1937. He stated that there appeared to be no pathological process evidenced either clinically or on pathological examinations made shortly after the alleged accident and for a period of at least two years thereafter. He admitted, however, that by reason of the contact with sulphur dioxide there might have been a throat irritation as evidenced by the cough described by the lay witnesses. This condition he characterized as possibly being a laryngitis or tracheitis. He further conceded that such a condition although it is not a pulmonary condition might cause a permanent functional disability which he would measure to the extent of approximately twenty-five per cent. of total disability.

Dr. Pollak, a recognized expert in the field of pulmonary diseases, testified from examinations made by him and a study of the medical reports and the X-rays. He expressed his opinion there was no causal connection between the death and the episode of October 7th, 1937. He stated that X-rays had been taken a few days after that episode and these X-rays showed an old healed tubercular lesion in the left upper lobe. He stated there was no active condition manifest either on clinical signs or in the X-ray pictures and that if there were any connection between the episode and a pulmonary condition it certainly would have shown some active condition. The fact was that there was no active condition shown either clinically or otherwise. He conceded, however, that sulphur dioxide is an irritating vapor or gas and that it might cause a tracheitis which is a purely local condition brought about by the irritation of the membranes. He did

not attempt to estimate the extent of such a condition if it did exist.

After careful consideration of the testimony adduced before me, it is my opinion that giving the most favorable interpretation of the testimony possible, that the petitioner suffered an accident arising out of and in the course of his employment on October 7th, 1937. I further find that he inhaled sulphur dioxide which caused him to be incapacitated for a period of approximately two weeks and thereafter he returned to work. I further find from the testimony that this did not cause any pulmonary condition either directly or by aggravation of a tubercular process.

I am of the opinion, however, considering the testimony of the lay witnesses and a description of the coughing which the petitioner had and the admissions of Dr. Koppel and Dr. Pollak of the possibility of a tracheitis that there was an irritation of the throat causing a tracheitis which in turn caused a permanent disability. The extent of that disability I find to be twenty-five per cent. of total.

It is, therefore, * * * ordered, that judgment be entered in favor of the petitioner and against the respondent for permanent disability amounting to twenty-five per cent. of total. * * *

JOHN C. WEGNER,
*Deputy Commissioner.*