HARLEY R. BODLEY, Executor of the Estate of WILLIAM FORTNER, Deceased,

Defendant Below, Appellant,

*vs.*

RHODA E. JONES, also known as RHODIE E. JONES,

Complainant Below, Appellee.

*Supreme Court, on Appeal, December 30, 1948.*

594

RICHARDS, C. J., and TERRY and CAREY, JJ., sitting.

*William Prickett,* for appellant.

*Philip Cohen,* for appellee.

RICHARDS, Chief Justice, delivering the opinion of the court:

It appears from the proceedings in this case that Harley R. Bodley was appointed by the Register of Wills of New Castle County executor of the estate of William Fortner, deceased. As such executor it became his duty to adopt such a course as would protect the assets of the estate and finally to distribute them among the parties entitled thereto.

Among the assets of the deceased was a mortgage for $3,500 which the appellee, Rhoda E. Jones, also known as Rhodie E. Jones, claimed represented an investment of money belonging to her. She filed a probated claim for this amount and interest with said executor. When the executor failed to pay said probated claim, a bill was filed in the Court of Chancery on behalf of appellee praying that the amount of said mortgage be impressed with a trust for her. An answer was filed by the executor denying that the mortgage belonged to the appellee and the question was

briefed and argued on a motion for a decree notwithstanding the answer. The Chancellor entered a decree for judgment in favor of the appellee notwithstanding the answer, 26 *Del. Ch.* 218, 17 *A. 2d* 84, and an appeal from said decree was taken to this court. Said appeal was sustained, 27 *Del. Ch.* 273, 32 *A. 2d* 436, and the case was sent back to the Court of Chancery for trial upon the merits. A trial was then had upon the merits and a second decree was ordered by the Chancellor in favor of the appellee, the cost of the proceeding being taxed against her, 28 *Del. Ch.* 191, 39 *A. 2d* 413. A motion was then made for leave to file a bill of review upon the ground that new facts had been discovered, which was denied by the Chancellor and an appeal was again taken to this court. This appeal was briefed and argued and an opinion handed down by this court affirming the decree of the Chancellor, *ante p.* 480, 59 *A. 2d* 463. Drafts of orders were prepared and handed to the court by both the appellant and appellee, the difference being that the appellant's draft provided that the costs of both appeals, including cost of printing, should be taxed against the appellee under *Rule* 65 and 68, and that the Chancellor should be directed to make an allowance to the attorney for the appellant from the amount represented by said mortgage for $3,500.

The attorney for the appellant, William Prickett, Esquire, then presented a petition to this court praying that an allowance be made to him for his services in this litigation, payable out of the fund represented by said mortgage for $3,500 decreed to belong to the appellee.

The rules of this court contain the following provisions with respect to costs:

"Rule 65. In the case of reversal, affirmance or dismissal with costs the amount paid for certifying and printing the record may be taxed as a part of the costs."

"Rule 68. This Court, in exercise of its sound legal discretion may award costs in all cases as the circumstances of such cases may require."

Our attention was called to the fact that the appellee, Rhoda E. Jones, failed to appear at the time fixed for the hearing before the Chancellor and it was necessary to adjourn twice before the case could proceed. This circumstance was evidently considered by the Chancellor as he decided the case in her favor but decreed that the costs be paid by her. Having heard the case, the Chancellor was in a position to determine the effect of her failure to appear, and to appraise the inconvenience and loss to the parties connected therewith caused by the delay. The fact that he decreed that the costs should be taxed against her is not sufficient reason why the costs incurred by the appeal to this court should also be taxed against her. The only delay in this court was caused by the failure of the attorneys to file their briefs and there has been no disposition to take advantage of that.

The argument was made that the costs and allowance to the petitioner, should not be taxed against the fund decreed to the appellee because all of the parties entitled to share in Fortner's estate were opposed to the second appeal and it was taken and prosecuted without their consent. It does not appear that all of the parties entitled to share in the estate of Mr. Fortner were opposed to the second appeal, but granting that it did so appear, we cannot agree that it would be sufficient reason to justify his executor in not prosecuting the appeal.

When the appellant was appointed executor of the estate of William Fortner, deceased, he acquired title to all the personal property of said deceased regardless of where the same might be located, and it became his duty to collect everything which was due the estate, pay the debts and distribute the residue under the directions of his will. *Wilkins v. Ellett, Administrator,* 9 *Wall.* 740, 19 *L. Ed.* 586; *New York Trust Company. v. Riley,* 24 *Del. Ch.* 354, 16 *A.* 2d 772; *In re Brown's Estate,* 28 *Del. Ch.* 562, 52 *A.* 2d 387. Consequently, when the bill was filed in this case averring that the plaintiff named therein was entitled

to the sum of $3,500 represented by a certain mortgage held by the deceased, it became the duty of the executor to take such action as was necessary to protect the estate. He was acting primarily as the representative of the estate of Mr. Fortner and not of the parties who were entitled to the same upon distribution. It was necessary for him to employ counsel to advise him as to the proper course to take and to represent him throughout the proceedings.

It is quite true that the respondent did not start this controversy, or "elbow his way" into it as was said in *Poole v. Betts,* 18 *Del. Ch.* 15, 156 *A.* 251, but was required to defend it by reason of his position as executor of Mr. Fortner in order to properly protect the estate. He is not, however, in the position of a receiver, or is his attorney in the position of the attorney for a receiver or other interested parties as in the case of *Penington v. Commonwealth Hotel Construction Company,* 18 *Del. Ch.* 238, 158 *A.* 140; and *McWilliams, Jr. Co. v. Missouri-Kansas Pipe Line Company,* 21 *Del. Ch.* 308, 190 *A.* 569, where the question was what service, if any, they had rendered to create or protect the fund which was the subject of the litigation. His efforts were entirely on behalf of the estate which he was legally bound to protect. The advice of his attorney and the work performed by him defending the proceedings in the Court of Chancery and the two appeals to this court, was in connection with the discharge of his said duties as executor. This being the case whatever costs he incurred by acting in this capacity, or expenses which he necessarily made by employing counsel to defend him, should be borne by the estate which he represents.

The question raised in the case of *Davis v. Rawlins, Adm'r.,* 2 *Har.* 125, was similar to the question now before the court with respect to the payment of the attorney employed by the executor. The opinion of the court is not reported but the following language found in the syllabus is very appropriate:

"An administrator is bound to defend the estate of his intestate

against claims which he does not think just; and if in a proper case he employs a solicitor in Chancery for this purpose, he is entitled to charge the solicitor's fee as against the estate."

The argument was made that the appellee; Rhoda E. Jones, should share the costs and expenses of the litigation for four reasons: First, that she created the situation out of which the litigation arose, by placing her money in a mortgage in another person's name and failing to provide proper evidence of the trust thus created. Second, that she prolonged the litigation and increased the expenses by changing her position during the proceedings before the Chancellor. Third, that she prolonged the trial, introduced new issues and increased the expenses by absconding from the jurisdiction. Fourth, that as a result of the litigation the sum of $3,500 has been made available to her, less the amount deducted by order of the court, which she would not otherwise have received.

We are not impressed by the first reason above referred to, because it does not appear from the record that said appellee, Rhoda E. Jones, was responsible for the situation which gave rise to the litigation. The mortgage was taken in the name of Mr. Fortner without any mention of the fact that the money belonged to her or that she had any interest in it. The only direct evidence that the money belonged to her is found in the instrument of writing which Mr. Fortner signed to the effect that the $3,500 represented by that mortgage belonged to her and if he did not attend to it during his life time he wanted her to have it after his death. This is not sufficient to hold her entirely responsible for the situation which existed in connection with said mortgage.

The second and third reasons above referred to arose while the case was pending in the Court of Chancery. The Chancellor was in a much better position than this court to determine whether she should be penalized for her conduct there. The fact that he ordered that the costs should be paid by her is evidence that he considered that sufficient

recompense for any conduct on her part which delayed or interfered with the proceeding before him.

The fourth reason, namely, that because the appellee acquired $3,500 by the litigation which she would not otherwise have had, she should pay the costs and expenses incurred thereby, is not convincing to us. The Chancellor decided that she was legally entitled to the money which opinion was affirmed by this court and it should not be used as a basis for directing her to pay the costs of the proceeding and the expenses incurred by her opponent.

In addition to the rules of this court above referred to in reference to costs *Paragraph* 4907, *of Code of* 1935, provides that "A Court of Equity, * * * shall make such order concerning costs in every case as shall be agreeable to equity." The general rule is, in actions at law, the prevailing party is entitled to costs as a matter of right; while in equity the allowance of costs is largely a matter of discretion. 14 *Am. Jur. Sec.* 10, *page* 9; 20 *C.J.S., Costs,* § 10, *page* 271. *Rule* 68 provides that this court may use its discretion and award costs in all cases as the circumstances may require. This question of costs has been considered in a number of cases decided in this State, the latest of which is *Kennedy v. Emerald Coal & Coke Co.,* 27 *Del. Ch.* 55, 30 *A.* 2*d* 269. In that case, a suit was brought by minority stockholders of a corporation to protect the interests of the corporation as well as those of the complainants. There were certain circumstances in connection with a plan of refinancing, which up to the time of the stockholders meeting justified the complainant's position. The action taken at the stockholders' meeting, however, clarified what had previously been done. The bill was dismissed, but under the circumstances the Vice-Chancellor held that the respondent should pay the costs incurred up to the time of the stockholders' meeting, and that the complainants should pay the costs subsequent to the stockholders' meeting. In the case of *Old Time Petroleum Company v. Turcol, et ux.,* 18 *Del. Ch.* 121, 156 *A.* 501, a bill was filed asking for specific

performance of a contract for the sale of land and for an injunction. The complainant was the tenant under a lease and there was extended argument before the Chancellor concerning the sufficiency of the notice given by it by which it undertook to avail itself of a certain optional agreement in said lease. The argument seemed to turn on a certain provision in the lease requiring the lessee to give at least sixty days' notice in writing if he desired to purchase the premises. The Chancellor decreed that if the complainant should pay into the registry of the court the sum he found to be due on the day named in the decree, less any outstanding liens, the defendants should execute and deliver a deed and be perpetually enjoined from prosecuting the dispossessory action pending in the Court of Common Pleas; but if the payment was not made, the permanent injunction would be denied, the preliminary injunction dissolved and the bill dismissed. The costs in any event were imposed upon the complainant. This order was made in view of the unusual facts existing in that particular case.

In the case *Kingston v. Home Life Ins. Co., et al.,* 11 *Del. Ch.* 258, 101 *A.* 898, a bill was presented to the Chancellor by stockholders of the Insurance Company, to annul contracts made by the company and to correct irregularities of its officers and directors.

The Chancellor decreed that by reason of certain concealments and deceptions in the reports made by the Insurance Company which were probably largely responsible for the litigation a part at least of the costs should be put on the two defendants.

In *Stoeckle v. Rosenheim, et al.,* 11 *Del. Ch.* 30, 95 *A.* 300, a bill for certain relief was presented to the Chancellor followed by a cross bill by part of the respondents. There was uncertainty on both sides as to the exact facts, and both sides shifted their position. Much testimony was taken during the proceeding some of which was confusing. The Chancellor decreed that all the costs should be charged

against the complainant because the mistake of its officers caused the litigation started by the original bill, and the complainants in the cross bill were successful in part as to their claims.

In the case of *Security, Trust & Safe Deposit Company v. Ward,* 10 *Del. Ch.* 408, 93 *A.* 385, a bill was presented for specific performance. The complainant sold certain real estate at public auction to the respondent who claimed there was a defect in the title and refused to take it. A deed for the property was attached to the bill as a tender and the prayer was that the respondent be compelled to accept it. The Chancellor held as there were certain important questions of law to be decided before the respondent should have been expected to take the title offered him, and the deed in fact tendered him being insufficient, all of the costs should be paid by the complainant out of the proceeds of the sale.

In each of the cases above referred to unusual circumstances existed which influenced the Chancellor in imposing costs. Where such is the case, we think, it is proper for the court to depart from the usual rule and consider all the existing circumstances in order to determine by whom the costs shall be paid.

After carefully considering the course which has been taken in this case and all of the facts which have been called to our attention in connection therewith, we are unable to find any reason why the costs should not follow the decree of the Chancellor and be paid by the losing party.

We have previously stated that it was necessary for the executor to employ an attorney to represent the estate in the litigation started in the Court of Chancery and the appeal therefrom to this court. There is no doubt that Mr. Prickett rendered valuable service to him in this connection and he should be paid what his service was reasonably worth. It appears that he was allowed $2,500 by the Register of Wills on December 20, 1941, for services rendered in

the administration of the estate. That however, was prior to the Chancellor's first opinion on June 24, 1942, and consequently prior to much of the litigation in the Court of Chancery and all of the litigation in this court.

In view of these circumstances it seems to us that Mr. Prickett is entitled to additional compensation for his services. This additional compensation should be paid by the estate and the amount thereof should be determined by the Register of Wills.

The usual decree will be signed in this case.