# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JULIA MCGLOTHLIN,           )
                                    )
        Plaintiff,             )
                                      )
        v.                  )     C.A. No. N20C-08-186 FWW
                                      )
PETRUNICH ORAL &           )
MAXILLOFACIAL SURGERY,   )
                                    )
        Defendant.       )

Submitted: June 30, 2023
Decided: September 6, 2023

## MEMORANDUM OPINION and ORDER

*Upon Plaintiff Julia McGlothlin's Motion for Attorney's Fees and Costs:*
**GRANTED in part and DENIED in part.**

*Upon Plaintiff Julia McGlothlin's Motion for Final Judgment:*
**GRANTED in part and DENIED in part.**

Michele D. Allen, Esquire and Delia A. Clark, Esquire, ALLEN & ASSOCIATES, 4250 Lancaster Pike, Suite 230, Wilmington, Delaware 19805, Attorneys for Plaintiff, Julia McGlothlin.

Daniel C. Herr, Esquire, LAW OFFICE OF DANIEL C. HERR LLC, 1225 North King Street, Suite 1000, Wilmington, Delaware 19801, Attorney for Defendant, Petrunich Oral & Maxillofacial Surgery.

**WHARTON, J.**

## I.     INTRODUCTION.

Following a three-day trial, a jury found that Defendant Petrunich Oral & Maxillofacial Surgery ("Petrunich Surgery") intentionally discriminated against its former employee, Plaintiff Julia McGlothlin ("McGlothlin"), on the basis of her sex and pregnancy as well as on the basis of her need to tend to her family responsibilities related to her pregnancy. The jury awarded McGlothlin $26,000 in back pay and a total of $100,000 in punitive damages. McGlothlin now moves for attorney's fees, litigation costs, final judgment, and prejudgment interest. Petrunich Surgery opposes McGlothlin's Motion for Fees and Costs and partially opposes her Motion for Final Judgment. For the reasons stated below, both of McGlothlin's motions are **GRANTED** in part and **DENIED** in part.

## II.    FACTS AND PROCEDURAL HISTORY.[1]

McGlothlin filed her five-count Complaint on August 24, 2020.[2] Two counts survived Petrunich Surgery's Motion for Summary Judgment.[3] After mediation and

---

[1] The Court only addresses those facts necessary for the current Memorandum Opinion and Order. A more thorough recitation of the factual background may be found in the Court's summary judgment decision, *McGlothlin v. Petrunich Oral & Maxillofacial Surgery*, 2022 WL 2783811 (Del. Super. Ct. July 15, 2022).

[2] D.I. 1. Count 1 Sex and Pregnancy Discrimination in Violation of the Delaware Discrimination in Employment Act ("DDEA"); Count 2 Violations of the Delaware Family Responsibilities Act ("DFRA"); Count 3 Violation of the Delaware Persons with Disabilities in Employment Protection Act ("DPDEPA"); Count 4 Failure to Accommodate in Violation of DPDEPA; and Count 5, Violation of the Covenant of Good Faith and Fair Dealing (voluntarily dismissed).

[3] *McGlothlin*, 2022 WL 2783811, at *8.

settlement discussions failed, the case went to trial.[4] At trial, the jury was asked to determine whether Petrunich Surgery intentionally discriminated against McGlothlin on the basis of her sex and pregnancy[5] and whether Petrunich Surgery intentionally discriminated against McGlothlin on the basis of her need to tend to her family responsibilities related to her pregnancy.[6]

The trial took place from March 20, 2023 to March 22, 2023. At trial, both parties called witnesses and entered exhibits. McGlothlin called four witnesses – Sandra Anderson, a human relations consultant employed by Petrunich Surgery's accounting firm; Dr. Petrunich; Emily Martin, a former Petrunich Surgery employee; and herself.[7] Petrunich Surgery called Dr. Petrunich, Alexis Sharpes, and Melissa

---

[4] Herr Aff., Def.'s Resp. in Opp. to Pl.'s Mot. for Fees and Costs, D.I. 71 (entry dated "12/16/2022" stating "discuss case/settlement with client; make 65k offer to M. Allen[.]"); "Plaintiff asserted five counts in this litigation. After Defendant's Motion for Summary Judgment, two counts remained. Plaintiff demanded $250,000 on March 13, 2023 to resolve this litigation. Defendant rejected this demand and the matter proceeded to trial a week later." Def.'s Resp. in Opp. to Pl.'s Mot. for Fees and Costs, at P1, D.I. 71.

[5] The Court granted partial Summary Judgment on this count ("Defendant Petrunich Oral & Maxillofacial Surgery's Motion for Summary Judgment is **GRANTED** as to Count I, (but only as to Plaintiff Julia McGlothlin's claims that she was subjected to discriminatory conduct when she was refused pregnancy related accommodations to be excused from taking x-rays and for more frequent bathroom breaks) … [and] **DENIED** as to Count I, (but only as to Plaintiff Julia McGlothlin's claim that she was refused pregnancy leave when she was terminated while on leave)[.]" *McGlothlin*, 2022 WL 2783811, at *8; Jury Verdict Form, D.I. 66.

[6] Jury Verdict Form, D.I. 66.

[7] In support of her economic damages claim, McGlothlin explained that her yearly salary at Petrunich was $52,000 (excluding bonuses). Since her termination, however, she was unable to find a similarly well-paying job. Based on her initial

3

Nowocin, both former Petrunich Surgery employees. Neither party played any portions of video depositions, nor were any deposition transcripts entered into evidence.

Following the presentation of evidence, the jury returned verdicts in McGlothlin's favor.[8] It awarded her $26,000 in back pay and $50,000 in punitive damages on each count, for an aggregate of $126,000 in damages.[9]

In her Motion for Attorney's Fees and Costs, McGlothlin seeks $130,910.50 in attorney's fees and $4,669.84 in litigation costs. In her Motion for Final Judgment she asks for $28,778.48 in prejudgment interest on the total damages awarded by the jury from August 24, 2020, the date she filed her Complaint, until the jury returned its verdict on March 22, 2023.[10]

In its Response in Opposition to Plaintiff's Motion for Fees and Costs, Petrunich Surgery argues for a significant reduction in attorney's fees,[11] and "objects to all costs and [argues that] the Court should exercise its discretion to award little to no costs."[12] In its Response in Partial Opposition to Plaintiff's Motion for Final

---

calculations, she suffered a loss of approximately $130,000. After cross-examination, highlighting some mathematical errors, McGlothlin arrived at a re-calculated loss of $125,800.

[8] Jury Verdict Form, D.I. 66.

[9] *Id.*

[10] Pl.'s Mot. for Final Judgment, D.I. 68.

[11] Def.'s Resp. in Opp. To Pl.'s Mot. for Fees and Costs, *passim*, D.I. 71.

[12] *Id.* at ¶17 (citation omitted).

4

Judgment, Petrunich Surgery agrees that prejudgment interest should be awarded, but in the amount of $3,515.32 for the $26,000 back pay award only.[13]

McGlothlin submitted replies to Petrunich Surgery's Response to the Motion or Attorney's Fees and Costs[14] and its Response in Partial Opposition the Motion for Final Judgment.[15]  In those replies, McGlothlin acknowledges that she is entitled to pretrial interest on compensatory damages only[16] and that some of the costs for which she seeks reimbursement may not qualify to be taxed as costs.[17]

### III.    THE PARTIES' CONTENTIONS.

**A.    Motion for Attorney's Fees and Costs.**

**1.  Attorney's Fees.**

McGlothlin argues that, as the prevailing party, the Court should award her reasonable attorney's fees.[18]  In support of her request for $130,910.50 in attorney's fees, McGlothlin submitted a comprehensive Activities Export,[19] a copy of the Pre-Lit Contingency Fee Agreement ("the Agreement"),[20] and an affidavit from attorney James H. McMackin, III ("McMackin").[21]  In her affidavit, McGlothlin's attorney,

---

[13] *Id.* at ¶¶4–7.
[14] Pl.'s Reply in Support of Mot. for Attorney's Fees and Costs, D.I. 75.
[15] Pl.'s Reply in Support of Mot. for Final Judgment, D.I. 76.
[16] *Id.* ¶1.
[17] Pl.'s Mot. in Support of Mot. for Attorney's Fees and Costs, at ¶18, D.I. 75.
[18] Pl.'s Mot. for Attorney's Fees and Costs, at ¶1, D.I. 67.
[19] *Id.* at Ex. A-1.
[20] *Id.* at Ex. A-2.
[21] McMackin Aff., Pl.'s Mot. for Attorney's Fees and Costs, Ex. B, D.I. 67.

Michele Allen ("Allen"), claims that "[a]ll of the legal services rendered by [her] and [her] firm and the expenses incurred … were, in [her] professional opinion, necessary to obtain the favorable result achieved for Plaintiff[.]"[22]

The Activities Export is a 77-page line-item "contemporaneous" account of counsel's actions throughout litigation.[23]  In the written motion, McGlothlin presents a brief list of items for which she is seeking reimbursement.[24]  She does not, however, cite to any supporting case law, nor does she group any of the proffered items based on compensability.

The Agreement, titled "Re: Pre-Lit Contingency Fee Agreement,"[25]  states in relevant part that Allen & Associates is handling the case "for a 33% contingency fee or reimbursement of hourly rate, whichever is higher."[26]  It is e-signed by Allen and McGlothlin.[27]

In his affidavit, McMackin explains that he knows that Allen has decades of experience as an attorney, justifying her hourly billing rate of $325.[28]  He similarly claims that the rates billed by her "associates, law clerks and paralegals referenced in the motion for attorney's fees are reasonable and customary for this type of

---

[22] Pl.'s Mot. for Attorney's Fees and Costs, Ex. A, at ¶8, D.I. 67.
[23] *Id.* at ¶3a.
[24] *Id.* at ¶3b.
[25] *Id.* at Ex. A-2.
[26] *Id.* at Ex. A-2.
[27] *Id.*
[28] *Id.* at Ex. B, *passim*.

litigation."[29]  McMackin also states that he was "advised as to the amount of work performed and reviewed the Motion for Attorney Fees and Costs and supporting documents."[30]

Petrunich Surgery opposes an award of $130,910.50 in attorney's fees.  It argues that since this was a "basic case," it did "not … require[] several attorneys plus several staff members.  [The] matter most certainly did not require two attorneys and a law clerk for Plaintiff at trial."[31]  Pointing to the Delaware Rules of Professional Conduct,[32] alleging problems with the contingency fee agreement,[33] and calling the requested amount "extreme[,]"[34] it claims that the agreed-upon contingency of 33% should be awarded.[35]  If, however, the Court finds "that Plaintiff is entitled to more than 33% of $126,000, then it should be a substantial discount against $53,332.50 (164.1 hours multiplied by Ms. Allen's rate of $325 per hour)."[36]  Petrunich Surgery "eliminated 40% of Plaintiffs' [sic] claims, so a discount against $53,332.50 should be applied."[37]

---

[29] *Id.* at Ex. B, ¶6.
[30] *Id.* at Ex. B, ¶4.
[31] Def.'s Resp. in Opp. to Pl.'s Mot. for Fees and Costs, at ¶12, D.I. 71.
[32] *Id.* at ¶¶2–5.
[33] E.g., "A contingency fee must be premised on the success of the client, not unreasonable phantom billing." *Id.* at ¶10.
[34] *Id.* at ¶11. It emphasizes that the requested amount "equates to an approximate 104% contingency fee in comparison to the $126,000 award." *Id.* at ¶4.
[35] *Id. passim.*
[36] *Id.* at ¶13. This amount is what counsel for Petrunich Surgery billed.
[37] Def.'s Resp. in Opp. to Pl.'s Mot. for Fees and Costs, at ¶13, D.I. 71.

### 2. Litigation Costs.

In support of her request for $4,669.84 in litigation costs, McGlothlin submits another multi-page Activities Export.[38]  She summarizes her request for costs as including: "filing fees, deposition transcript fees, service fees, copying, witness fees and reproduction, etc."[39]

Petrunich Surgery argues that since no depositions or medical records were admitted into evidence, none of the associated costs should be assessed against it.[40] It also argues against assessing it reproduction costs since "Plaintiff has not substantiated what portions, if any, … were actually used at trial"[41] and the mediation fee since McGlothlin "only recovered half of her final pre-trial demand."[42] The gravamen of Petrunich Surgery's objections is that "the Court should exercise its discretion to award little to no costs" because "Plaintiff has abdicated her responsibilities to indicate what, precisely, is statutorily authorized to be taxed to Defendant as a cost."[43]

### B. Motion for Final Judgment.

---

[38] Pl.'s Mot. for Attorney's Fees and Costs, Ex. A-3, D.I. 67.
[39] Allen Aff., Pl.'s Mot. for Attorney's Fees and Costs, Ex. A, at ¶14, D.I. 67.
[40] *Id.* at ¶14.
[41] *Id.* at ¶15.
[42] *Id.* at ¶16.
[43] *Id.* at ¶17 (citations omitted).

8

McGlothlin claims entitlement to prejudgment interest "at the rate of 5% over prime from the date of the filing of the Complaint on all damages pursuant to 6 *Del. C* §2301(a)."[44] In support of her request for $28,778.48 in prejudgment interest (calculated using the full $126,000 jury award) McGlothlin provides the Court with a table purporting to show the breakdown of her prejudgment interest calculations.[45] The table sets out nine time frames of differing durations with corresponding interest amounts, but provides no explanation of how those dates were chosen or how the interest amounts were calculated.[46]

Petrunich Surgery argues that 6 *Del. C.* §2301(a) calls for the award of 5.25% interest; 5% over the Federal Discount Rate at the time the Complaint was filed, not the prime rate as McGlothlin contends.[47] It also argues that "Delaware law is well settled that pre-judgment interest on compensatory damages is awarded as a matter of right and is not subject to judicial discretion."[48] So, it claims that 5.25% prejudgment interest must only be applied to the awarded $26,000 in compensatory back pay,[49] for a total of $3,515.32 in prejudgment interest.[50] It reaches that amount

---

[44] Pl.'s Mot. for Final Judgment, at ¶2a, D.I. 68.

[45] *Id.* at ¶2b; Ex. 2.

[46] *Id.*

[47] Def.'s Resp. in Partial Opp. to Pl.'s Mot. for Final Judgment, at ¶¶1–3, D.I. 72.

[48] *Id.* at ¶4 (quoting *Salaman v. National Media Corp.*, 1994 WL 465535, at *1 (Del. Super. Ct. July 22, 1994).

[49] *Id.* at ¶¶3–7.

[50] *Id.* at ¶3.

by multiplying $26,000 by 5.25% to arrive at a yearly interest of $1,365, or $3.7397 per day multiplied by 940 days between August 24, 2020 and March 23, 2023.[51]

McGlothlin replied to Petrunich Surgery's Response to her Motion for Final Judgment.[52] In her Reply, she concedes that she is not entitled to prejudgment interest on the punitive damages award.[53] She states her Motion for Final Judgment sought prejudgment interest at "the rate of 5% plus the discount rate from the date of the filing of the Complaint"[54] eliding her original contention that prejudgment interest was based on the prime rate. She also adjusts the date she alleges prejudgment interest began accruing from the date she filed her Complaint – August 24, 2020 – to the date of the violation – July 3, 2019 when the Federal Reserve Discount Rate was 3.00%.[55] Noting that Petrunich Surgery employed a fixed rate in its calculations, she abandons her prior variable interest rate methodology and adopts a fixed rate calculation as well.[56] According to McGlothlin, 5% over a fixed discount rate of 3.00% from July 3, 2019 through March 22, 2023 would result in yearly interest of $2,080.00, with a daily rate of $5.70.[57] She calculates there to be 1,358

---

[51] *Id.*
[52] Pl.'s Reply in Support of Mot. for Final Judgment, D.I. 76.
[53] *Id.* at ¶1.
[54] *Id.*
[55] *Id.* at ¶¶2,3.
[56] *Id.* at ¶¶1,3
[57] *Id.* at ¶3.

days between the injury and the award, yielding a total of $7,740.60 in prejudgment interest.[58]

## IV. STANDARD OF REVIEW.

For attorney's fees, "[t]he general rule in Delaware is that attorney's fees are not awarded to the prevailing party."[59] The Court may, however, order the payment of attorney's fees if "authorized by some provision of statute or contract."[60] Importantly, "[t]he party seeking the attorneys' fees … bears the burden of establishing the reasonableness of the amount sought."[61] When assessing the reasonableness of a potential fee, the Court must be guided by Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct.[62] Here, the fee shifting provision of 19 *Del. C.* § 715(d) applies.

---

[58] *Id.*

[59] *Dreisbach v. Walton*, 2014 WL 5426868, at *5 (Del. Super. Ct. Oct. 27, 2014)(citation omitted).

[60] *Id.*

[61] *Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 692752, at *1 (Del. Ch. Feb. 24, 2010)(citations omitted); 19 *Del. C.* §715(d).

[62] *Mahani v. Edix Media Group, Inc.*, 935 A.2d 242 (Del. 2007)(the Delaware Supreme Court affirmed the Chancellor's award of attorney's fees and other costs "because the Chancellor properly weighed all the factors listed in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct.")(*Mahani*, 935 A.2d at 243)).

11

The prevailing party is generally entitled to an award of costs upon entry of a final judgment,[63] subject to the trial court's discretion.[64]  These costs may include court filing fees,[65] costs of depositions (so long as the video and/or transcript is introduced at trial),[66] and the costs of mediation.[67] When costs are awarded as "a matter of course," the court has the discretion to determine how much to award, "consider[ing] … whether the cost reasonably could have been avoided."[68]  "The Courts will not award costs, however, if the request for a certain fee is not substantiated by the prevailing party."[69]

Prejudgment interest is awarded as a matter of right.[70] "[I]nterest accumulates from the date payment was due the plaintiff, because full compensation requires an allowance for the detention of the compensation awarded and interest is used as a basis for measuring that allowance."[71] When the parties have not agreed to a rate,

---

[63] 10 *Del. C.* §5101; Del. Super. Ct. Civ. R. 54(d).

[64] *Bishop v. Progressive Direct Ins. Co.*, 2019 WL 2009331, at *1 (Del. Super. Ct., May 3, 2019) ("Generally speaking, the decision to award costs is left to the discretion of the trial court.")(citations omitted).

[65] *E.g.*, *Cooke v. Murphy*, 2013 WL 6916941 at *4 (Del. Super. Ct. Nov. 26, 2013)(citations omitted).

[66] Del. Super. Ct. Civ. R. 54(f)–(h); 10 *Del. C.* § 8906.

[67] *Cooke*, 2013 WL 6916941 at *6.

[68] *Dreisbach*, 2014 WL 5426868 at *4 (citation omitted).

[69] *Russo v. Medlab Clinical Testing, Inc.*, 2001 WL 34082277, at *4 (Del. Super. Ct. Nov. 14, 2001).

[70] *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011)(quoting *Moskowitz v. Mayor and Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978)).

[71] *Id.*

12

"the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due[.]"[72]

## V. DISCUSSION.

### A. Motion for Attorney's Fees and Costs

#### 1. Attorney's Fees.

Pursuant to 19 *Del. C.* §715(d)'s fee shifting provision, McGlothlin seeks $130,910.50 for a total of 589.7 hours of work billed by several attorneys, law clerks, associates, and paralegals. She provides the Court 77 pages of "contemporaneous time records." In determining the amount of reasonable attorney's fees to award, the Court must be guided by Rule 1.5's non-exhaustive list of factors.[73] The factors are:

> 1) [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> 2) [T]he likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> 3) [T]he fee customarily charged in the locality for similar legal services;
> 4) [T]he amount involved and the results obtained;
> 5) [T]he time limitations imposed by the client or by the circumstances;
> 6) [T]he nature and length of the professional relationship with the client;
> 7) [T]he experience, reputation, and ability of the lawyer or lawyers performing the services; and
> 8) [W]hether the fee is fixed or contingent.[74]

---

[72] 6 *Del. C.* §2301(a).
[73] *Mahani*, 935 A.2d at 243.
[74] DRPC Rule 1.5.

13

Not all of those factors are pertinent here. The Court is unaware of any likelihood that McGlothlin was aware that representing her would preclude Allen from accepting other employment (factor 2), nor is the Court aware of any time limitations imposed by McGlothlin or by the circumstances (factor 5).

Other factors, all of which support the fee application, require little discussion. The fee is within the customary hourly range (factor 3);[75] Allen & Associates was involved in this case from the onset (factor 6);[76] and Allen has a great deal of experience, a positive reputation, and is a competent attorney (factor 7).[77]

The remaining factors require more in depth analysis. The first factor takes into account the time and labor required, the novelty and difficulty of the questions involved, and the skill required to properly perform the legal services. There was nothing extraordinary about the time and labor required here. Allen filed a complaint, engaged in routine written discovery, participated in depositions of her client, Dr. Petrunich, and four others, participated in mediation, defended Petrunich Surgery's summary judgment motion, moved *in limine* to exclude certain evidence, and prepared for and tried the case.[78] The trial itself was short and uncomplicated. A total of six individual witnesses testified,[79] all of whom were lay witnesses. This

---

[75] McMackin, Aff., Pl.'s Mot. for Attorney's Fees and Costs, Ex. B, at ¶6, D.I. 67.
[76] *See* Compl., D.I. 1.
[77] McMackin, Aff., Pl.'s Mot. for Attorney's Fees and Costs, Ex. B., D.I. 67.
[78] *See,* Docket.
[79] Dr. Petrunich testified twice, once for each side.

case was, as Petrunich Surgery described it, "a basic case."[80]   From a labor standpoint, the case was significantly overstaffed.  The case simply did not require two lawyers, and four law clerks/paralegals,[81] including one law clerk/ paralegal at trial to "assist with note preparation and coordination of witnesses."[82]  Given that two of the four witnesses McGlothlin called – Dr. Petrunich and herself – were present at all times in the courtroom and lawyers are fully capable of taking their own notes, the presence of this paralegal in the courtroom for the entire trial seems unnecessary.  For an experienced practitioner accustomed to litigating disability and discrimination claims, as Allen is, this case presented no novel or difficult questions.  Further, the skill necessary to perform the legal service properly is that of a reasonably competent civil trial lawyer practicing in the area.

The Court next looks at the fee amount requested and the results obtained.  Naturally, any case where the attorney is requesting fees in excess of the amount the jury awarded the client presents an optics problem.  Here, that problem is mitigated to some degree by the fact that the fee request and the client's recovery, when prejudgment interest is included, are comparable.  The Court also is mindful of the

---

[80] Def.'s Resp. in Opp. to Pl.'s Mot. for Fees and Costs, at ¶12, D.I. 71.

[81] The Court appreciates that Allen & Associates experienced employee turnover. Nevertheless, it appears at least four lawyers worked on the case in addition to law clerks and paralegals, although not concurrently. *Id.* at ¶21.

[82] Allen Supp. Aff., Pl.'s Reply in Support of Mot. for Attorney's Fees and Costs, at ¶20, D.I. 75.

societal interest to be served by fairly compensating attorneys representing clients who are victims of discrimination. Absent fair compensation, lawyers would be unlikely to take on representation of those clients and those guilty of discrimination would go unpunished,

There is no doubt that McGlothlin prevailed. But, that victory was not a resounding one. McGlothlin's Complaint originally alleged five counts.[83] She voluntarily agreed to dismiss one of them.[84] The Court granted summary judgment in favor of Petrunich Surgery on two and partial summary judgment on the third.[85] Only one count survived intact.[86] Further, the jury's verdict was mixed. Although McGlothlin argued for $125,800 in total lost wages,[87] the jury only awarded her $26,000 in back pay and no front pay.[88] It awarded her no other compensatory damages on either her sex and pregnancy discrimination claim or her claim based on her need to tend to her family responsibilities related to her pregnancy.[89] The jury awarded her $50,000 in punitive damages on each of those claims. Thus, the outcome was decidedly mixed.

---

[83] Complaint, D.I. 1.
[84] *McGlothlin,* 2022 WL 2783811, at *8.
[85] *Id.*
[86] *Id.*
[87] On direct examination, McGlothlin claimed a total loss of $130,000, but adjusted that figure to $125,800 after mathematical errors were pointed out on cross-examination.
[88] Jury Verdict Form, D.I. 66.
[89] *Id.*

The last factor the Court considers is whether the fee is fixed or contingent. The arrangement here is a hybrid – a contingency fee of 33% or and hourly rate, whichever is greater.[90] The higher here is the hourly fee. Petrunich Surgery raises and ethical issue with the structure of the fee agreement, but the Court need not engage in that dispute. It simply notes the differential between what Allen's fee would have been if it were a contingency fee versus the hourly fee she is requesting.

The factors set out in Rule 1.5 are not exclusive and the Court may consider other factors as well. As McGlothlin notes in her Reply in Support of the Motion for Attorney's Fees and Costs, "[T]he determination of reasonable fees begins by examining the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. Excluded from the calculation are hours which are excessive, redundant or otherwise unnecessary."[91] The Court finds significant the relative amounts of time expended on behalf of the parties. Petrunich Surgery's defense devoted 164.1 hours to the case, doing what it describes as "the same – and likely – more substantive work" as work done on behalf of McGlothlin.[92] In contrast, McGlothlin's team spent more than three and a half times as many hours - 589.7 - working on her behalf, split among lawyers, paralegals and law clerks.[93] While the

---

[90] Allen Aff., Pl.'s Mot. for Attorney's Fees and Costs, Ex. A-2, D.I. 67.

[91] Pl.'s Reply in Support of the Motion for Attorney's Fees and Costs, at ¶6 (citing *Hensley v Eckerhart,* 461 U.S. 424, 433 (1983)), D.I. 75.

[92] Herr Aff., Def.'s Resp. in Opp. to Pl.'s Mot. for Fees and Costs, at ¶9, D.I. 72.

[93] Pl.'s Mot for Attorney's Fees and Costs, at ¶3.a., D.I. 67.

Court accords some deference to the party initiating a lawsuit and having the burden of proof, the disparity is striking and supports the Court's conclusion that McGlothlin's team was significantly overstaffed.

The factors that this Court is to consider in determining reasonable attorney's fees are mixed. But, on balance, the Court finds that McGlothlin's request is unreasonable. The case was routine, the results mixed, and McGlothlin's team significantly overstaffed. Also unreasonable is Petrunich Surgery's suggestion that the Court award a 33% contingency fee of $42,000. Determining a reasonable fee is necessarily an imprecise exercise. For example, the Court cannot simply parse the Activities Export and subtract charges attributable to extra attorneys or paralegals. Some amount of those tasks would have to be performed by someone else resulting in some charge. Nonetheless, considering all of the above, the Court finds an award of $85,000 in attorney's fees to be reasonable.[94]

### 2.     Litigation Costs.

Superior Court Civil Rule 54(b) provides that "costs shall be allowed as of course to the prevailing party upon application to the Court within ten (10) days of entry of final judgment unless the Court otherwise directs."[95] Awarding costs is a

---

[94] If the $85,000 were attributable all to Allen, it would represent 261.5 hours at her rate of $325 per hour – still nearly 120 hours more than Herr. If she worked the same amount of hours as Herr, her fee would be $53,332.50.
[95] Super. Ct. Civ. R. 54(d).

matter of judicial discretion,[96] but, generally, the prevailing party is entitled to costs.[97] McGlothlin is the prevailing party and, therefore, is entitled to costs. The question is what costs.

In her Motion for Attorney's Fees and Costs, McGlothlin asks for $4,669.84 in costs incurred for filing, payment for medical records, service of process fees, mediation fee, reporter fees, reproduction costs and witness fees.[98] She attaches an itemization of those costs to Allen's affidavit, but does not group them by category.[99]

In its Response, Petrunich Surgery argues that McGlothlin fails to supply any bases for her claimed costs.[100] It contends that, since no deposition transcripts or medical records were introduced into evidence, costs for those items are not chargeable to it, nor are subpoena costs related to the depositions.[101] McGlothlin's failure to substantiate what reproductions actually were used at trial precludes recovery for them, according to Petrunich Surgery.[102] It also disputes McGlothlin's request for reimbursement of the mediation fee because McGlothlin's jury award of

---

[96] *Phelps v. West,* 2018 WL, 1341704, at *1 (Del. Super. Ct. Mar. 15, 20189) (citing *Olson v. A-del. Constr. Co., Inc.* 2014 WL 1325909, at *1 (Del. Super. Ct. Feb. 12, 1014)).
[97] *Id.* (citing *Bodley v. Jones,* 65 A. 2d 484, 487 (Del. Ch. 1948)).
[98] Pl.'s Mot. for Attorney's Fees and Costs, at ¶4, D.I. 67.
[99] Allen Aff., *Id.* at Ex. A-3.
[100] Def.'s Resp. in Opp. at ¶¶14-17, D.I. 71.
[101] *Id.* at ¶14.
[102] *Id.* at ¶

$126,000 was less than her demand of $250,000.[103] Finally, Petrunich Surgery submits, because McGlothlin "has abdicated her responsibilities to indicate what, precisely, is statutorily authorized to be taxed to Defendant as a cost," the Court should award "little to no costs."[104]

In her Reply, McGlothlin groups some of the expenses she wants taxed as costs to Petrunich Surgery as follows: (1) $150.00 for service fees; (2) $865.00 for filing fees; (3) $120.00 witness fees; (4) $450.00 for mediation fees; and $266.40 for reproduction costs for trial a notebook.[105] Those items total $1,851.40.[106] She maintains that additional charges of $2,818.44 for copying costs, delivery fees, medical records, and deposition transcripts, which she acknowledges may not qualify as taxed costs, might be considered included as part of the fee shifting statute under 19 *Del. C.* § 715(d).[107]

The Court awards McGlothlin $1,851.40 in litigation costs. As McGlothlin acknowledges, expenses for medical records and deposition transcripts not used at trial "may not qualify as taxed costs."[108] She is correct.[109] The Court declines to award them under statutory fee shifting as it has already determined to award

---

[103] *Id.* at ℙ16.
[104] *Id.* at ℙ17.
[105] Pl.'s Reply in Support of the Motion for Attorney's and Costs, at ℙ17, D.I. 75.
[106] *Id.*
[107] *Id.* at ℙ18.
[108] *Id.*
[109] Super. Ct. Civ. R. 54(f)–(h); 10 *Del. C.* § 8906.

20

attorney's fee of $85,000 or the equivalent of 261.5 hours at Allen's usual rate. Mediation fees are discretionary,[110] and the Courts awards them.

## B.  Motion for Final Judgment.

In her Motion for Final Judgment, McGlothlin requested prejudgment interest "at the rate of 5% over prime"[111] from August 24, 2020 to March 22, 2023 in the amount of $28,288.48.[112]  Petrunich Surgery agreed that prejudgment interest was due to McGlothlin from the date of the filing of the Complaint – August 24, 2020 – to the date the jury returned its verdict – March 22, 2023, a period of 940 days, but only on the $26,000 back pay award.[113]

Apart from the fact that it requests prejudgment interest, McGlothlin's current request, as expressed in her Reply, has nothing in common with what she requested in her Motion.  In a remarkable display of flexibility, she has changed every variable. Before, she based the calculation of prejudgment interest on the prime rate.[114]  Now, she bases it on the discount rate (as the statute requires).[115]  Before, she sought prejudgment interest on all damages, including punitive damages.[116]  Now, she seeks

---

[110] *Cooke*, 2013 WL 6916941, at *6.
[111] Pl.'s Mot. for Final Judgment, at ¶2a, D.I. 68.
[112] *Id.* at ¶2b.
[113] Def.'s Resp. in Partial Opp. to Pl.'s Mot. for Final Judgment, at ¶¶ 1-3, D.I. 71.
[114] Pl.'s Mot. for Final Judgment, at ¶2a, D.I. 68.
[115] Pl.'s Reply in Support of the Mot. for Final Judgment, at ¶1, D.I. 76; 6 *Del. C.* § 2301(a).
[116] Pl.'s Mot. for Final Judgment, at ¶2b, D.I. 68.

it only on the back pay award.[117]  Before, she requested prejudgment interest from August 24, 2020.[118]  Now, she seeks it from July 3, 2019.[119]  Before, her calculation accounted for fluctuations in interest rates.[120]  Now, she uses a fixed rate.[121]

Although the parties now agree that prejudgment interest is to be calculated at 5% over the Federal Reserve discount rate, applied only to the back pay award, in the end, neither party correctly calculates the amount of prejudgment interest due McGlothlin.  Prejudgment interest is available as a matter of right where the damages are of a pecuniary nature and are capable of calculation prior to judgment.[122]  Here, the award for back pay clearly is calculable.  Prejudgment interest is calculated from the date of injury/payment due at 5% over the Federal Reserve Discount Rate.[123]  "A successful plaintiff is entitled to interest on money damages as a matter of right from the date the liability accrues.[124]  Liability accrued when McGlothlin was terminated on July 3, 2019.  Thus, she is entitled to prejudgment interest from that date.

---

[117] Pl.'s Reply in Support of Mot. for Final Judgment, at ℙ1, D.I. 76.
[118] Pl.'s Mot. for Final Judgment, at ℙ2b, D.I. 68.
[119] Pl.'s Reply in Support of Mot. for Final Judgment, at ℙ2, D.I. 76.
[120] Pl.'s Mot. for Final Judgment, Ex. 2, D.I. 68.
[121] Pl.'s Reply in Support of Mot. for Final Judgment, at ℙℙ1,3, D.I. 76.
[122] *Janas v. Biedrzycki*, 2000 WL 33114354, at *5 (Del. Super. Ct. Oct. 26, 2000).
[123] 6 *Del. C.* §2301(a);
[124] *Summa Corporation v. Trans World Airlines, Inc.,* 540 A.2d 403, 409 (Del. 1988).

Petrunich Surgery errs, and McGlothlin copies that error, in applying a fixed rate of interest. The rate actually fluctuated between .25% and 4.75%.[125] If a purpose of prejudgment interest is to fully compensate a plaintiff for loss sustained by virtue of a defendant unjustly retaining what rightfully belongs to the plaintiff, then the Court sees no reason why a calculation based on variable interest rates would not be the more accurate method to accomplish that purpose. Setting a fixed rate at the time of the loss would result in a windfall to a plaintiff if the rate fell and a loss if the rate rose. Adjusting the interest rate as the discount rate rises or falls fully compensates McGlothlin without overcompensating or undercompensating her.

Accordingly, the Court finds that McGlothlin is entitled to prejudgment interest on the compensatory damages award of $26,000 at the various statutory rates in effect from July 3, 2019 through March 22, 2023.

---

[125] *See*, https://www.nasdaq.com/market-activity/fixed-income/disc/historical. *From* July 3, 2019 through July 31, 2019, the rate was 3.00%; from August 1, 2019 through September 18, 2019, it was 2.75%; September 19, 2019 through October 30, 2019, it was 2.50%; from October 31, 2019 through March 3, 2020, it was 2.25%; from March 4, 2020 through March 15, 2020, it was 1.75%; from March 16, 2020 through March 16, 2022, it was .25%; from March 17, 2022 through May 4, 2022, it was .50%; from May 5, 2022 through June 19, 2022, it was 1.00%; from June 20, 2022 through July 27, 2022, it was 1.75%; from July 28, 2022 through September 21, 2022, it was 2.50%; from September 22, 2022 through November 2, 2022, it was 3.25%; from November 3, 2022 through December 15, 2022, it was 4.00%; from December 16, 2022 through February 1, 2023, it was 4.50%; and from February 2, 2023 through March 22, 2023, it was 4.75%.

## VI. CONCLUSION.

For the foregoing reasons, the Court finds that McGlothlin is entitled to final judgment as follows:

| | |
|---|---|
| Jury Award | $126,000.00 |
| Attorney's fees | $85,000.00 |
| Litigation costs | $1,851.40 |

The Court also finds that McGlothlin is entitled to prejudgment interest on the jury's award of $26,000 from July 3, 2019 through March 22, 2023 at the rate of 5% above the prevailing Federal Reserve discount rates during that period.

The Court notes that McGlothlin's original proposed Order of Final Judgment did not include post-judgment interest.[126] Her revised proposed Order of Final Judgment, attached to her Reply in Support the Motion for Final Judgment, includes post-judgment interest "from the date of the verdict March 23, 2023, of 10%."[127]

McGlothlin shall submit a revised Final Order of Judgment with a calculation of pretrial interest consistent with this Opinion and Order within 15 days.

Petrunich Surgery shall have 10 days thereafter to submit any objections to McGlothlin's revised Final Order of Judgment.

---

[126] Pl.'s Mot. for Final Judgment, Ex. 1, D.I. 68.
[127] Pl.'s Reply in Support of the Motion for Final Judgment, Rev. Ex. 1, D.I. 76.

**THEREFORE,** Plaintiff Julia McGlothlin's Motion for Attorney's Fees and Costs is **GRANTED in part and DENIED in part.** Her Motion for Final Judgment is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.